[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

----------------------------------------

No. 05-14725
Non-Argument Calendar

----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 24, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-61048-CV-WPD

DEVON P. STOUTE,
THEOLA V. STOUTE,

                                        Plaintiffs-Appellants,


                        versus


RANDY L. MINK, Officer,
A. COLLINS, Officer,
D. SMITH,
OFFICER CARLO, #3505,
OFFICER NIELY, #3383,
et al.,

                                        Defendants-Appellees.

----------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Florida
----------------------------------------------------------------
**(April 24, 2007)**

Before EDMONDSON, Chief Judge, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Devon Stoute and his mother, Theola Stoute, (collectively the "Plaintiffs") proceeding pro se, appeal the district court's grant of partial summary judgment to officers of the Sunrise, Florida, Police Department (collectively the "Defendants"), the denial of Plaintiffs' motion for summary judgment, and the grant of final judgment to Defendants after a jury trial on Plaintiffs' 42 U.S.C. § 1983 claims.[1]  No reversible error has been shown; we affirm.

"We review a district court's grant of summary judgment de novo, viewing the facts -- as supported by the evidence in the record -- and reasonable inferences from those facts in the light most favorable to the nonmoving party."  Young v. City of Palm Bay, 358 F.3d 859, 860 (11th Cir. 2004).  Summary judgment is proper where no genuine issue of material fact exists.  Id.

A.    Defendants' Motion for Summary Judgment

Plaintiffs first argue that the district court improperly granted partial summary judgment to Defendants because Defendants unlawfully entered

---

[1]Devon was staying at his mother's home in Sunrise when he was arrested for attempted murder. Plaintiffs filed a section 1983 complaint, alleging that officers violated the Fourth and Fourteenth Amendments when they entered Theola's home and arrested Devon without a warrant.

Theola's house to arrest Devon without a warrant. Plaintiffs contend that officers had sufficient time to obtain an arrest warrant.

To state a claim for relief under section 1983, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 119 S.Ct. 977, 985 (1999). Warrantless searches and seizures inside a person's home are presumptively unreasonable; but a warrantless search or seizure might be justified where both probable cause and exigent circumstances exist. United States v. Burgos, 720 F.2d 1520, 1525 (11th Cir. 1983). Exigent circumstances exist where the delay in obtaining a warrant yields to the "urgent need for immediate action." Id. at 1526. Besides hot pursuit, these factors might indicate exigent circumstances:

> (1) the gravity of the offense with which the suspect is to be charged; (2) a reasonable belief that the suspect is armed; (3) probable cause to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is on the premises being entered; and (5) a likelihood that delay could cause the destruction of evidence or jeopardize the safety of the officers.

United States v. Ramos, 933 F.2d 968, 972 (11th Cir. 1991).

Here, Plaintiffs do not dispute that officers had probable cause to arrest Devon.[2] Therefore, the remaining issue is whether exigent circumstances justified the initial entry into Theola's home to complete the arrest. We conclude that exigent circumstances existed. Devon was suspected of attempted murder; and, because he was accused of shooting the victim just hours before his arrest, it was not unreasonable for officers to believe that Devon was armed and posed a danger to them and to the public. Officers had probable cause to believe that Devon committed the crime because the victim identified him by name and in a photograph line-up. In addition, the victim told officers that Devon was living at the address of Theola's house, which police research confirmed, and that he suspected Devon would attempt to flee. In the light of all of these circumstances, the district court did not err in concluding that exigent circumstances justified the initial entry into Theola's home to arrest Devon.[3]

---

[2]Although Plaintiffs argued in their complaint that officers lacked probable cause, they have not renewed that argument on appeal; it is abandoned. See United States v. Ford, 270 F.3d 1346, 1347 (11th Cir. 2001).

[3]Because the district court did not err in concluding that exigent circumstances supported officers' initial entry into Theola's home, we reject these arguments raised by Plaintiffs as without merit: (1) that because officers' entry into the home violated the Fourth Amendment, all force used to arrest Devon -- against either him or Theola -- was excessive, and (2) that officers' entry into Theola's home invaded her privacy. And to the extent that Plaintiffs argue that officers used excessive force against Theola because they pulled her out of the house with their guns drawn, Plaintiffs' argument is meritless because officers' force -- used in an attempt to arrest Devon, who was suspected of being armed, for attempted murder -- was not unreasonable. See Graham v. Connor, 109 S.Ct. 1865, 1871 (1989) (explaining that amount of force an officer reasonably can use depends on the circumstances

B.      Plaintiffs' Motion for Summary Judgment

Plaintiffs assert that the district court erred in denying their motion for summary judgment because, even if we accept Defendants' statement that Devon was arrested after he and Theola exited the home, officers compelled Plaintiffs to leave the house.  In making this argument, Plaintiffs contend that more than seven officers carrying weapons surrounded their home at 4:15 a.m. and that officers did not inform Plaintiffs that they could refuse to open the door.

Here, we must construe the facts in the light most favorable to Defendants.  According to Defendants, when officers were outside of Theola's home around 4:15 a.m., they telephoned the house and spoke to Plaintiffs; and about 15 minutes later, Devon and Theola came out of the house and into the front yard.  Under these facts, the district court properly denied Plaintiffs' motion for summary judgment.  See Knight v. Jacobson, 300 F.3d 1272, 1277-78 (11th Cir. 2002) (explaining that an officer is not prevented "from telling a suspect to step outside his home and then arresting him without a warrant"); United States v. Kimmons, 965 F.2d 1001, 1008-09 (11th Cir. 1992) (rejecting argument that "show of force

---

of a particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight").

outside [defendant's] home coerced his exit in violation of the Fourth Amendment" because exigent circumstances justified defendant's arrest).[4]

C.    Jury Trial Issues

Plaintiffs challenge the district court's response to this question asked by the jury during their deliberations: "Is it unlawful entry for Detective Mink to go back and photograph and retrieve the gun after he found it while he had permission, but after that permission was revoked?"[5]  In considering this question, the district court determined -- outside of the presence of the jury, but before the parties -- that Detective Mink would be entitled to qualified immunity on whether he needed a warrant before seizing the contraband that he saw during the search to

---

[4]We acknowledge that the Supreme Court vacated our 1992 decision in Kimmons, on grounds unrelated to the issue we have discussed and remanded the case to us for additional consideration under Stinson v. United States, 113 S.Ct. 1913 (1993).  See Small v. United States, 113 S.Ct. 2326 (1993).  On remand, we concluded that neither our original decision in Kimmons, nor our opinion in that case, was affected by Stinson; and we reinstated the judgment in that case.  See United States v. Kimmons, 1 F.3d 1144 (11th Cir. 1993).

[5]Plaintiffs asserted that Devon initially consented to a search of his bedroom but revoked his consent almost immediately after giving it; so Plaintiffs contended that Detective Mink seized contraband from Devon's bedroom while knowing that Devon had revoked his consent. Defendants asserted at trial that Detective Mink learned that Devon revoked his consent only after Detective Mink had seen the contraband but before he had seized it.  The jury's question appears to ask about the lawfulness of the seizure under Defendants' version of events.

which Devon initially consented. As a result, the district court answered "no" to all parts of the jury's question.[6]

Before the district court answered the jury's question, Plaintiffs did not object to the district court's proposed answer, even though the district court detailed it for the parties and asked if "anything further" needed to be discussed. In fact, Plaintiffs' lawyer explained during discussion of the jury's question, "If Detective Mink found the gun while he had consent, he was then able to go back in and get the gun even if consent had been withdrawn." Therefore, we decline to review the district court's response to the jury's question because Plaintiffs invited the claimed error. See United States v. Silvestri, 409 F.3d 1311, 1327 (11th Cir.) (explaining the rule that "a party may not challenge as error a ruling or other trial proceeding invited by that party" and declining to review a challenge to jury instruction because of defendant's failure to object to the allegedly erroneous instruction), cert. denied, 126 S.Ct. 772 (2005).

---

[6]To the extent that Plaintiffs argue that the district court erred -- during a discussion about proposed jury instructions -- in assuming Defendants' version of events about the search, we reject this argument. Although the district court did discuss Detective Mink's potential liability under Defendants' version of events, the district court left to the jury the issue of whether Detective Mink had consent to search Devon's room at all. In fact, just before answering "no" to the jury's question, the district court noted, "that still leaves an issue in the case, and that is whether [the jury]believe[s] Mr. Stoute, that he revoked the consent before [police] even went in the first time."

Plaintiffs next argue that Devon did not consent voluntarily to the search of his room. Plaintiffs' lawyer raised this issue to the district court as an objection to the proposed jury instructions. The district court explained that it could decide as a matter of law whether Devon's consent was voluntary and that his consent was valid. Plaintiffs' lawyer only responded, "Agreed, Your Honor."

We conclude that Plaintiffs waived the issue of the voluntariness of Devon's consent. Plaintiffs' lawyer reasonably can be understood to be withdrawing his objection raised on this issue; and Plaintiffs did not renew the objection or raise it anew later in the trial.[7] Thus, we need not address arguments about the voluntariness of Devon's consent.

**AFFIRMED.**

---

[7]After a careful review of the record, we are not persuaded by Plaintiffs' argument raised in their reply brief that their lawyer only agreed to allowing the district court to decide the issue as a matter of law and did not agree to the conclusion that Devon's consent was given voluntarily. And the district court's incorrect statement that the issue of whether consent was given voluntarily is a matter of law, see Ohio v. Robinette, 117 S.Ct. 417, 421 (1996) (explaining that "voluntariness [of consent] is a question of fact to be determined from all the circumstances"), does not affect our conclusion that Plaintiffs waived the voluntariness issue at trial.