
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No.    16-50389 |
| Plaintiff-Appellee, | D.C. No.<br>2:13-cr-00666-SJO-1 |
| v. | |
| VALERY BOGOMOLNY, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted July 10, 2018
Pasadena, California

Before:  BERZON and N.R. SMITH, Circuit Judges, and CASTEL,[**] District
Judge.

Valery Bogomolny appeals his conviction for six counts of healthcare fraud.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

    [*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

    [**]    The Honorable P. Kevin Castel, United States District Judge for the
Southern District of New York, sitting by designation.

1. <u>Jury Instructions.</u> The district court did not commit plain error in its jury instructions. First, Instruction No. 14 clearly stated that it applied only to the indictment. The indictment did not articulate that the jury may convict based on two different mental states, but, rather (in the conjunctive) charged Bogomolny with violating 18 U.S.C. § 1347 in the two possible substantive ways outlined in the statute. Instruction No. 14 merely stated that the prosecution did not have to prove Bogomolny had violated 18 U.S.C. § 1347 in *both* of those ways. Second, Instruction No. 15 correctly stated that the prosecution had to prove that Bogomolny violated 18 U.S.C. § 1347 "knowingly *and* willfully." This was the correct mental state for healthcare fraud. "Juries are presumed to follow jury instructions." *United States v. Scott*, 642 F.3d 791, 800 (9th Cir. 2011) (per curiam). It would be incorrect to conclude that the jury took an instruction clearly relating to the indictment and applied it to the jury instruction outlining the elements of health care fraud.

2. <u>Double Counting.</u> The district court did not plainly err by imposing the United States Sentencing Guidelines (USSG) aggravating-role and abuse-of-trust enhancements. Bogomolny was not subject to double counting. *See United States v. Park*, 167 F.3d 1258, 1261 (9th Cir. 1999). First, each enhancement applies to different "kind[s] of harm." *Cf. id.* at 1261 (quoting *United States v. Reese*, 2 F.3d

2

870, 895 (9th Cir. 1993)). The aggravating-role enhancement applied because of Bogomolny's supervisory role, U.S. Sentencing Guidelines Manual § 3B1.1(b) (U.S. Sentencing Comm'n 2008) [hereinafter USSG], and the abuse-of-trust-enhancement applied because he held a "position[] of trust with respect to Medicare," *United States v. Adebimpe*, 819 F.3d 1212, 1219 (9th Cir. 2016); *see also* USSG § 3B1.3. Second, the USSG explicitly contemplate application of both § 3B1.3 and § 3B1.1(b). USSG § 3B1.3.

3. <u>Aggravating-Role Enhancement.</u> The district court did not abuse its discretion by imposing an aggravating-role enhancement. *See* USSG § 3B1.1(b). First, Bogomolny (1) was the sole owner of Royal Medical Supply and "made all the decisions"; (2) authorized his staff to send documents under his name; (3) hired several delivery drivers; and (4) had signatory authority on Royal Medical Supply's bank account. Thus, the district court did not clearly err by finding Bogomolny was a "manager or supervisor." USSG § 3B1.1(b). Second, Bogomolny worked with delivery drivers and in-house staff, as well as doctors who referred prescriptions to him. Therefore, the district court did not clearly err in finding that the criminal activity involved "five or more participants or was otherwise extensive." *Id.*

4. <u>Jury Prejudice.</u> Bogomolny waived his jury prejudice claim. "[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc) (citation and quotation marks omitted). In response to the courtroom incident with Bogomolny's brother, Bogomolny's counsel laid out a list of options (inquire whether the jury was prejudiced, do nothing, or provide a limiting instruction), and specifically stated that requesting an inquiry might not be the "best thing to do because it just draws attention to the situation." The district court stated it was open to "anything reasonable," but Bogomolny never revisited the issue. Bogomolny thus "intentionally relinquished" his right to a hearing concerning jury prejudice. *Id.*

5. <u>Prosecutorial Misconduct.</u> First, the prosecution's statement regarding the nature of the case does not rise to plain error. The comments were factual statements based on record evidence introduced during trial and, thus, not "particularly egregious" conduct. *See United States v. Ruiz*, 710 F.3d 1077, 1085 (9th Cir. 2013) (quoting *United States v. Sanchez*, 659 F.3d 1252, 1256 (9th Cir. 2011)).

Second, the prosecution's statement about "close relationship[s]" between Bogomolny and various doctors was not plain error. The prosecution put on evidence that a large number of the prescriptions (70 percent) were from a few

4

doctors and Bogomonly testified that he worked with Dr. Eisenberg's office in San Diego and when the doctor expanded to Fresno. A conclusion that there was a "close relationship" with the doctors was a permissible inference from the record. *See United States v. Necoechea*, 986 F.2d 1273, 1282 (9th Cir. 1993).

Third, the prosecution's statement that Bogomolny "did all these deliveries" was not plain error. The prosecution was referencing the delivery slips with Bogomolny's initials on them, which Bogomolny admitted "look[ed] like [his] initial[s]." Further, Bogomolny testified that he "did all the deliveries [himself]" during the first "four or five years," and after that did much of the delivery work. The prosecution's statement was not an "egregious" misrepresentation. *See Ruiz*, 710 F.3d at 1085 (quoting *Sanchez*, 659 F.3d at 1256).

Fourth, the prosecution's statement regarding Bogomolny's passport was harmless. Bogomolny argued that his Ukrainian passport was evidence that he was out of the country during some of the charged offenses. The prosecutor stated that only Bogomolny's word supported that statement and did not mention the Ukrainian passport. This was harmless. Bogomolny's counsel raised the issue in his closing argument, the jury had extensive testimony on the topic, and the passports were placed into evidence.

Fifth, the prosecutor's statements regarding Bogomolny's truthfulness were not plain error. "[I]t is neither unusual nor improper for a prosecutor to voice doubt about the veracity of a defendant who has taken the stand." *United States v. Phillips*, 704 F.3d 754, 766 (9th Cir. 2012) (citation and internal quotation marks omitted). Here, the prosecution's statements regarding Bogomolny's truthfulness were reasonably inferred from the record. For example, regarding the delivery signatures, Bogomolny admitted they looked like his initials, but denied that they were actually his. It was not improper for the prosecutor to suggest that he was lying.

Finally, the prosecutor's statement that, to believe Bogomolny, the jury would have to believe that everyone else was lying, was not plain error. It is not improper for a prosecutor to argue that when there are two versions provided by different witnesses, one cannot be true. *United States v. Alcantara-Castillo*, 788 F.3d 1186, 1194-95 (9th Cir. 2015). The prosecutor simply argued that Bogomolny's account and the accounts provided by the remaining witnesses could not both be true. This was not an improper statement.

**AFFIRMED.**