[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————

No. 22-13432

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TAURIAN JAVON WERTS,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:21-cr-00053-HL-TQL-1

————————————

Before BRANCH, GRANT, and ED CARNES, Circuit Judges.

PER CURIAM:

Taurian Werts appeals his 75-month sentence of imprisonment for possession of a firearm by a felon. In arriving at that sentence, the district court applied a base offense level enhancement to Werts's guidelines range because, in 2017, he was convicted of possession of marijuana with intent to distribute under Georgia law.

Werts argues that we should vacate his sentence because his 2017 conviction for possession of marijuana with intent to distribute is not a predicate controlled substance offense under the sentencing guidelines, for two reasons. First, he contends that the Georgia statute was (at the time of the state conviction) and is (at the time of federal sentencing) categorically broader than the guideline definition of controlled substance offense. Second, he asserts that we must apply the "categorical approach" when interpreting the guidelines and assume that Werts committed the least culpable conduct criminalized by the statute—possession of "hemp" with intent to distribute—which was no longer a crime under state or federal law at the time of Werts's federal sentencing. Thus, and because the application of the enhancement raised his guidelines range, he argues that his sentence was procedurally and substantively unreasonable.

After review, we affirm. Werts's arguments about the base offense level enhancement are foreclosed by our recent opinion in *United States v. Dubois,* No. 22-10829, --- F.4th ----, 2024 WL 927030 (11th Cir. Mar. 5, 2024). And because Werts's only arguments

about the reasonableness of his sentence are based on the guidelines issue, the conclusion that *Dubois* controls here is enough to resolve this case.

## I.     Background

Werts pleaded guilty in 2022 to possession of a firearm by a felon.[1]  Due in part to his prior drug conviction, the probation office assigned Werts a base offense level of 22 under U.S.S.G. § 2K2.1(a)(3),[2] which requires the enhanced base offense level if:

> (A) the offense involves a (i) *semiautomatic firearm that is capable of accepting a large capacity magazine*; or (ii) firearm that is described in 26 U.S.C. § 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a *controlled substance offense*[.]

---

[1] Werts was originally charged with one count of possession of a firearm by a felon, one count of possession of marijuana with intent to distribute, and one count of carrying a firearm during and in relation to a drug trafficking crime. After Werts entered a not guilty plea, the government filed a superseding information on just the felon-in-possession charge.

[2] Werts took the position in his sentencing memorandum that, without the enhancement, his base offense level would have been 20, and his total offense level would have been 21, giving him a guidelines range of 57 to 71 months rather than the 70 to 87 months that the PSI calculated and the court accepted.

U.S.S.G. § 2K2.1(a)(3) (2021) (emphasis added).[3]  Application Note 1 of § 2K2.1 defined "controlled substance offense" by reference to § 4B1.2(b)[4] which, in turn, defined "controlled substance offense" as follows:

> The term "controlled substance offense" means an offense [1] under federal or state law, [2] punishable by imprisonment for a term exceeding one year, [3] that prohibits the manufacture, import, export, distribution, or dispensing of a *controlled substance* (or a counterfeit substance) or the possession of a *controlled substance* (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b) (2021) (emphasis added).[5]

---

[3] The probation office noted that, as part of the offense conduct, Werts possessed a semiautomatic Intratec firearm capable of accepting a "large capacity magazine" and that Werts had a 2017 Georgia conviction for possession of marijuana with intent to distribute, which qualified as a "controlled substance offense."

[4] The Application notes to § 2K2.1 explain that the term "controlled substance offense" also can be defined by reference to Application Note 1 of the Commentary to § 4B1.2 (Definitions of Terms Used in Section 4B1.1).  But Application Note 1 of § 4B1.2 deals with other definitions that do not apply here.

[5] Section 4B1.2(b) was amended in 2023 (which was after Werts was sentenced), but, because the amendments all deal with maritime drug offenses, they are irrelevant. *See* U.S.S.G. § 4B1.2(b), November 01, 2023 (Amendment 822).

Werts objected to the enhancement, arguing that (1) the Georgia statute was and is categorically broader than the guideline definition of controlled substance offense and (2) the court must apply the categorical approach to his 2017 state conviction and assume that Werts committed the least culpable conduct criminalized by the statute—which, in his case, was no longer a crime under state or federal law at the time of his federal sentencing. Assuming that his guidelines objections prevailed, Werts asked for a sentence at the low end of what he argued was the guidelines range. The probation office rejected Werts's objection and submitted the final PSI with a suggested base offense level of 22.

The district court overruled Werts's objection. Adopting the PSI, the district court found a total offense level of 23,[6] a criminal history category IV, and a guidelines range of 70 to 87 months. The court sentenced Werts to 75-months' imprisonment.

Werts appealed.

---

[6] This offense level includes the enhanced base offense level of 22, a four-point enhancement based on the specific offense characteristics (possession of a firearm in connection with a drug crime), a two-point reduction for acceptance of responsibility, and a one-point reduction for entering a timely guilty plea.

## II.    Standard of Review

This Court "review[s] *de novo* the interpretation and application of the Sentencing Guidelines." *United States v. Dupree*, 57 F.4th 1269, 1272 (11th Cir. 2023) (en banc).

## III.    Discussion

Werts argues that the district court misapplied the base offense level enhancement, and therefore imposed a procedurally and substantively unreasonable sentence.

In broad strokes, Werts advances this argument on two fronts. "First, Georgia's marijuana offense" is "categorically overbroad from [sic] the federal definition at the time of Mr. Werts'[s] prior state arrest."[7] "Second, by the time of his underlying federal offense . . . both the federal and Georgia marijuana statutes had changed since his prior arrest" such that the least culpable conduct for which he could have been convicted in 2017 was no longer a crime at the time of his federal sentencing.

---

[7] In particular, Werts points to four alleged categorical "mismatches" between Georgia law and federal law:

    (1) what parts of the cannabis plant count as a controlled substance;

    (2) what species of cannabis count as a controlled substance;

    (3) what conduct counts as distribution of marijuana (*e.g.*, does "social-sharing" count or must there be a commercial transaction); and

    (4) what mental state is required for conviction.

For those reasons, he contends that, under the categorical approach, Georgia's statute is not a "controlled substance offense" for purposes of the guidelines.

While this case was pending, however, a panel of this court issued its decision in *Dubois,* 2024 WL 927030.[8]   In *Dubois*, we considered, among other things, whether the appellant's "Georgia marijuana conviction [was] a 'controlled substance offense' under" § 2K2.1(a)(4)(A) of the sentencing guidelines.[9]   *Id.* at *1.   Dubois, like Werts, was sentenced in 2022 under the 2021 version of the guidelines.   *Id.* at *1, *3.   Dubois, also like Werts, was assigned a higher base offense level than he would have had otherwise because of an enhancement for having sustained a "felony conviction of . . . *a controlled substance offense.*" *Id.* at *10 (alteration in original) (emphasis added) (quoting U.S.S.G. § 2K2.1(a)(4)(A)); *see also* U.S.S.G. § 2K2.1(a)(3).   And Dubois, like Werts, "objected to the probation officer's application of [the] enhanced base offense level" on the grounds that "his Georgia marijuana conviction d[id] not qualify as a categorical controlled substance offense under the guidelines." *Id.* at *2.

---

[8] We ordered briefing to address the effect of *Dubois* on this case.

[9] At the time *Dubois* was sentenced, § 2K2.1(a)(4)(A) provided for an enhanced base offense level of 20 if "(A) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G § 2K2.1(a)(4)(A) (2021). While Werts's base offense level was enhanced under § 2K2.1(a)(3), both provisions defined "controlled substance offense" by reference to § 4B1.2(b), so the same interpretive conclusions apply.

In particular, and again like Werts, Dubois argued "that we should vacate his sentence because his 2013 conviction for possession with intent to distribute marijuana is not a predicate 'controlled substance offense' under the Sentencing Guidelines" because the Georgia statute is "categorically broader than the guideline definition of 'controlled substance offense.'" *Id.* at *7. Under the categorical approach, Dubois pointed out, the court was required to assume that he had committed the least culpable conduct criminalized by the statute of conviction. *Id.* Dubois "explain[ed] that[,] at the time of his conviction in 2013, both Georgia and federal law defined 'marijuana' to include hemp." *Id.* (citing O.C.G.A. § 16-13-21(16) (2011); 21 U.S.C. § 802(16) (2009)). "But by the time he was sentenced for his federal offenses in 2022, both definitions had been amended to exclude hemp." *Id.* (citing O.C.G.A § 16-13-21(16) (2019); 21 U.S.C. § 802(16)(B)(i) (2018)). Thus, "[b]ecause the law at the time of his state conviction was broader than the law at the time of his federal sentencing, [Dubois] maintain[ed] that the state conviction is not a controlled substance offense." *Id.*

Analyzing the text of the guidelines, the panel concluded that "[a] drug regulated by state law is a 'controlled substance' for state predicate offenses, even if federal law does not regulate that drug." *Id.* at *8; *see also id.* ("More precisely, *state law* defines which drugs qualify as a 'controlled substance' if the prior conviction was under state law, and *federal law* defines which drugs qualify as a 'controlled substance' if the prior conviction was under federal

law.").[10]   Thus, "[b]ecause Dubois's underlying conviction was under Georgia law," the panel concluded that it was required to "consult Georgia law to determine whether the substance that he trafficked [was] a 'controlled substance' under the guidelines." *Id.* at *9.

And finally, the panel held that courts must look to state law at the time of conviction "even if [the substance the defendant was convicted of possessing] is no longer regulated when the defendant is sentenced for the federal . . . offense." *Id.* at *10.

In sum, *Dubois* held "that a 'controlled substance' under § 4B1.2(b)'s definition of 'controlled substance offense' is, for prior state offenses, a drug regulated by state law at the time of the conviction." *Id.* at *11.  The panel emphasized that this conclusion holds "even if [the substance] is not federally regulated, and even if it is no longer regulated by the state at the time of federal sentencing." *Id.*  Thus, "[b]ecause Georgia law regulated marijuana—including hemp—at the time of Dubois's 2013 conviction," the panel concluded that "the district court did not err

---

[10] The panel also "reject[ed] the parties' suggestion that [it] need not decide which sovereign's law controls to decide [Dubois's] appeal" because "our answer to this 'whose law' question informs our answer to the 'what time' question that follow[ed]." *Dubois,* 2024 WL 927030, at *9; *see also id.* at *11 (explaining that the only circuits to conclude that courts must look to the law at the time of federal sentencing, rather than the law at the time of the predicate conviction, did so on the theory that substances had to be controlled by *federal law* to be captured by the guidelines—and "th[at] distinction is absent here").

by enhancing Dubois's base-offense level under section 2K2.1(a)(4)(A)." *Id.*

Under the prior panel precedent rule, we are bound by holdings in prior published decisions that have not been overruled by the Supreme Court or this Court *en banc*. *United States v. Romo-Villalobos*, 674 F.3d 1246, 1251 (11th Cir. 2012); *United States v. Birge*, 830 F.3d 1229, 1232 (11th Cir. 2016) (explaining that the rule "applies only to holdings, not dicta"). "The holding of a case comprises both the result of the case and those portions of the opinion necessary to that result." *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1244 (11th Cir. 2017) (internal quotation marks omitted). Once we have decided that a statement is a holding, not dicta, "[t]he prior panel precedent rule applies regardless of whether the later panel believes the prior panel's opinion to be correct, and there is no exception to the rule where the prior panel failed to consider arguments raised before a later panel." *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019).

*Dubois* controls this case for three reasons. First, *Dubois*'s interpretation of "controlled substance offense"—on both the question of *which* law applies, and the question of *when* in time the law is to be assessed—is plainly a holding, because it was necessary to the judgment: affirming Dubois's sentence. *Dubois*, 2024 WL 927030, at \*11, 13.

Second, the issues *Dubois* resolves foreclose Werts's arguments. The four categorical mismatches Werts points to are premised on *comparing* how state and federal law define marijuana

and how they define the crime of possessing it with the intent to distribute it.[11]  And his point that hemp is no longer criminalized turns on comparing the definitions of marijuana—both state and federal—in 2017 versus 2022.  Given that the predicate conviction is an offense against state law, all of Werts's arguments fail *both* because *Dubois* directs us to state law, not federal law, and because *Dubois* directs us to the time of the state conviction, not the present. *Id.* at *7, 11.

Third, Werts's arguments about the reasonableness of his sentence depend entirely on his argument that his guidelines range was improperly calculated.  Since his guidelines argument fails, so too does his argument about the reasonableness of his sentence.

### IV.    Conclusion

In sum, Werts's arguments that the district court improperly applied § 2K2.1(a)(3) to raise his base offense level, and thus that his

---

[11] Werts suggests in a supplemental brief that *Dubois* does not foreclose all of his arguments because *Dubois* "addresses only the overbreadth concerns raised as a result of the changes in Georgia and federal law legalizing hemp products" and "does not consider all of the grounds [he] raise[s]." *See* Footnote 7 (detailing purported categorical mismatches).  We disagree.  Regardless, "there is no exception to the [the prior panel precedent] rule where the prior panel failed to consider arguments raised before a later panel." *Gillis*, 938 F.3d at 1198.

12                  Opinion of the Court                  22-13432

sentence was procedurally and substantively unreasonable, are foreclosed by *Dubois*. We therefore affirm his sentence.

**AFFIRMED.**[12]

---

[12] This appeal was originally scheduled for oral argument, but the panel unanimously agreed to remove it from the oral argument calendar under 11th Cir. R. 34-3(f).